UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BRENDA GEILING, d/b/a
LEE CONSTRUCTION,

Case No. 12-13119

Plaintiff,                          Honorable Thomas L. Ludington

v.

HEMLOCK SEMICONDUCTOR CORPORATION,
HEMLOCK SEMICONDUCTOR, LLC,
and DOW CORNING CORPORATION,

Defendants.
_____/

**OPINION AND ORDER GRANTING
DEFENDANTS' MOTION FOR JUDGMENT ON PLEADINGS**

The parties in this case first found themselves in Michigan State Court, where Plaintiff Brenda Lee-Geiling filed her original complaint. The state court dismissed the complaint, and Plaintiff appealed to the Michigan Court of Appeals. That court affirmed the trial court's decision, and Plaintiff abandoned her state-court lawsuit. She then filed the instant suit in the Western District of Michigan, and the case was subsequently transferred to this Court.

The case arises upon Defendants' motion for judgment on the pleadings. The issue is whether any of the federal statutes Plaintiff claims Defendants violated establish a private right of action. Because they do not, Defendants' motion will be granted, and Plaintiff's complaint will be dismissed with prejudice.

**I**

Plaintiff Brenda Lee-Geiling is a Michigan resident and licensed builder who conducted business under the assumed name of Lee Construction (LC) until September 2008, when LC was incorporated. In 2006, Plaintiff performed work as a subcontractor for Defendants Hemlock

Semiconductor Corporation (Hemlock) and Dow Corning Corporation (Dow Corning). Pl.'s Compl. 6, ECF No. 1. In November 2006, Plaintiff completed Defendants' standard application process to become a Prime Contractor. *Id.* Then in January 2007, Plaintiff was approved, permitting her to bid as a prime contractor on Defendants' various construction projects. *Id.*

Over the beginning of 2007, Plaintiff was "repeatedly told there was no work available" at Hemlock. Pl.'s Compl. ¶ 23. Plaintiff then met with Mike Crower, Hemlock's Construction Coordinator, to discuss upcoming work possibilities. Pl.'s Compl. ¶ 24. Plaintiff claims the fact that LC was owned by a woman was a part of the discussion. *Id.* When an LC Sales Representative, Ed Reynaert, attempted to follow up with Mr. Crower after the meeting, he was told LC was not approved for work. Pl.'s Compl. Ex. J. Mr. Cower asked not to be contacted again, and maintained that if LC's services were needed, it would be contacted. *Id.*

Plaintiff then emailed Michael Bush, Dow Corning's Strategic Supply Specialist, to confirm that LC remained an "approved vendor." Pl.'s Compl. Ex. K. Ten days later, Mr. Bush responded that it was. *Id.* On May 8, 2007 Plaintiff met with Mr. Bush and Bart Burza, a member of Dow Corning's Procurement team, to discuss the situation. Mr. Bush and Mr. Burza confirmed that Mr. Cowers alleged actions were inappropriate. Pl.'s Compl. ¶ 28. Plaintiff was told a meeting would be scheduled between herself and Hemlock Semiconductor's procurement team "to move Plaintiff forward in opportunities to bid." *Id.* On two occasions, Plaintiff met with Joe Mulders and Larry Dzuirka, Hemlock's representatives, to discuss LC's project capabilities. On June 20, 2007, Mr. Dzuirka notified Plaintiff that LC would be added to applicable construction package bid lists. Pl.'s Compl. Ex. L.

In July 2007, Mr. Bush invited LC to bid on three projects. The first was Dow Corning's DC-40 Entrance & Walkways project. LC was the successful bidder, and completed the job with

top evaluation scores.  Pl.'s Compl. Ex. A, at 1.  LC was also invited to bid on Dow Corning's DC-1 Paver project.  LC was again the selected bidder, and completed the project in October 2007.  Upon evaluation, LC received top marks.  Pl.'s Compl. Ex. A, at 2.  LC also successfully bid on Dow Corning's DC-30 Skylight project, which it completed in November 2007. Although LC did not receive top marks for paperwork or company attitude for that job, the company received top scores for all other categories.  Ex. A at 3.

Before completion of Dow Corning's Paver and Skylight projects, LC was invited to bid on a fourth project on August 15, 2007.  However, two weeks later, LC's invitation to bid on the project was revoked.  Pl.'s Compl. ¶ 35.  Plaintiff inquired as to why, but was told it was "confidential."  *Id*.  On September 4, 2007, Plaintiff met with Defendants' representatives.  She claims she was told Defendants did not want to do business with her kind of company.  Pl.'s Compl. ¶ 37.  Plaintiff claims she could only interpret this to mean "a woman owned company, as [LC] had been approved as a prime contractor under the same process as the other male owned prime contractors."  *Id*.  However, LC did finish the two projects it had already successfully bid on.

Plaintiff claims that on September 6, 2007 Defendants "were put on notice" she felt she had been discriminated against because of her sex.  Pl.'s Compl. ¶ 38.  Then, on October 9, 2007, Plaintiff maintains she was told LC would "no longer be allowed to bid on any projects of Defendants due to Plaintiff's allegation."  Pl.'s Compl. ¶ 39.  From that point forward, Plaintiff and LC were precluded from bidding on Defendants' construction projects.  A few invitations to bid were sent to LC after that, but they were all revoked as "mistakes."  Pl.'s Compl. ¶¶ 42–46.

On April 1, 2009, Plaintiff filed a complaint against Hemlock, Dow Corning, Hemlock Semiconductor, LLC, and Hemlock Semiconductor Group in Michigan state court.  Pl.'s Compl.

2. She claimed those Defendants discriminated against her on the basis of her sex in violation of Michigan's Elliott-Larsen Civil Rights Act. Defs.' Mot. Ex. A, at 4. She also alleged Defendants retaliated against her because of her allegations, again in violation of Michigan's Elliott-Larsen Act. *Id.* at 5. Plaintiff's final claim was that Defendants interfered with her economic expectancy when they revoked LC's right to bid on projects. *Id.* at 5–6. The Michigan court granted Defendants summary judgment, finding they were not places of public accommodation for purposes of the Elliott-Larsen Act. Defs.' Mot. Ex. B. Plaintiff then appealed the trial court's grant of summary judgment as to the Elliott-Larsen Act claims (I and II), but not the tortious interference claim. Defs.' Mot. Ex. C, at 2, n.4. The Michigan Court of Appeals affirmed the trial court's decision to grant Defendants' motion for summary judgment, and Plaintiff's state-court suit was dismissed.

Two months later, on March 9, 2012, Plaintiff filed the instant lawsuit in the Western District of Michigan. Her federal complaint arises from identical facts as her state-court complaint. Plaintiff asserts the same claims as her state-court complaint — sex discrimination, civil rights retaliation, and interference with economic expectancy. The only difference is that instead of filing the claims under Michigan's Elliott-Larsen Act, Plaintiff instead brings suit under an assortment of federal statutes and regulations. She claims Defendants violated the Housing and Community Development Act (42 U.S.C. §§ 5309); the Energy Reorganization Act (42 U.S.C. § 5891); and the Energy Administration Act (15 U.S.C. § 775). She also claims Defendants violated two federal regulations — 24 C.F.R. § 6; and 10 C.F.R. § 1040.11–.13.

Defendants filed a motion to transfer venue from the Western District of Michigan to this Court, which was granted. Presently before the Court is Defendants' motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Defendants assert they are entitled

to judgment as a matter of law because this Court lacks subject matter jurisdiction over Plaintiff's claims, Plaintiff's claims are barred by *Res Judicata*, and finally, because Plaintiff's claims are barred by the applicable statute of limitations.

## II

A district court must consider a motion under Rule 12(c) using the same standard of review as a Rule 12(b)(6) motion. *Roger Miller Music, Inc. v. Sony/ATV Publ'g, LLC*, 477 F.3d 383, 389 (6th Cir. 2007). To survive a Rule 12(b)(6) motion, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *see also Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 548 (6th Cir. 2007). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Id.* at 678 (internal quotation marks and citation omitted).

When considering whether to grant a Rule 12(c) motion, a court primarily considers the complaint's allegations, but may also take into account items appearing in the record and attached exhibits. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001). A court may also consider, without converting the motion into one for summary judgment, "matters of which a court may take judicial notice." *Bowers v. Wynne*, 615 F.3d 455, 470 (6th Cir. 2010) (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)). Proper subjects for judicial notice include "matters of public record (e.g. pleadings, orders and other papers on file in another action pending in the court; records or reports of administrative bodies; or the legislative history of laws, rules or ordinances) as long as the facts noticed are not subject to reasonable

dispute." *Pakootas v. Teck Cominco Metals, Ltd.*, 632 F.Supp.2d 1029, 1032 (E.D. Wash. 2009) (citing *Intri–Plex Techs., Inc. v. Crest Group, Inc.*, 499 F.3d 1048, 1052 (9th Cir. 2007); Fed. R. Evid. 201)).

It is well-established that "Rule 12(c) requires only one action by the district court for the conversion to a summary judgment motion to occur: failure to exclude presented outside evidence." *Max Arnold & Sons, LLC v. W.L. Hailey & Co.*, 452 F.3d 494, 503 (6th Cir. 2006). "*Max Arnold* makes clear that the district court need not actually rely upon materials outside of the pleadings to require the conversion of a Rule 12(c) motion into a motion for summary judgment." *Northville Downs v. Granholm*, 622 F.3d 579, 585 (6th Cir. 2010) (citing *Max Arnold*, 452 F.3d at 503). When matters outside the pleadings are presented in conjunction with a Rule 12(c) motion, they may be excluded to preserve the motion status under Rule 12(c). *Id.* In order to refrain from converting Defendants' motion into one for summary judgment, only that evidence which is found in the pleadings will be considered here.

### III

Defendants' first ground for judgment on the pleadings concerns whether Plaintiff has a private right of action. Defendants assert that the federal statutes and regulations Plaintiff relies upon do not establish a private right of action, and therefore this Court lacks subject-matter jurisdiction over her claims. While Defendants are correct — there is no private right of action for Plaintiff's claims — the result is slightly different than they suggest. "If a statute does not authorize a private right of action, the court should dismiss for failure to state a claim upon which relief can be granted, not for lack of subject matter jurisdiction." *M.J. Whitman & Co., Inc. Pension Plan v. American Financial Enterprises, Inc.*, 725 F.2d 394, 396 n.2 (6th Cir. 1984)

(citing *Lewis v. Transamerica Corp.*, 575 F.2d 237, 239 n.2 (9th Cir. 1978)).  As such, Plaintiff's complaint will be dismissed for failure to state a claim for relief.

"[T]he fact that a federal statute has been violated and some person harmed does not automatically give rise to a private cause of action in favor of that person."  *Touche Ross & Co. v. Redington*, 442 U.S. 560, 568 (1979) (quoting *Cannon v. University of Chicago*, 441 U.S. 677, 688 (1979)).  Congress, not the Judiciary, decides whether there is a private right of action to enforce a federal statute.  *Douglas v. Indep. Living Ctr. of S. California, Inc.*, 132 S. Ct. 1204, 1213 (2012).  The question of the existence of a statutory cause of action is, of course, one of statutory construction.  *Cannon*, 441 U.S. at 688.  As the Supreme Court has noted,

> When Congress intends private litigants to have a cause of action to support their statutory rights, the far better course is for it to specify as much when it creates those rights.  But the Court has long recognized that under certain limited circumstances the failure of Congress to do so is not inconsistent with an intent on its part to have such a remedy available to the persons benefited by its legislation.

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran*, 456 U.S. 353, 374 (1982) (quoting *Cannon*, 441 U.S. at 717).  When determining whether such a cause of action exists, "[t]he central inquiry remains whether Congress intended to create, either expressly or by implication, a private cause of action."  *Touche Ross*, 442 U.S. at 575.

Where, as in this case, federal statutes do not expressly confer a private right of action, the determination is limited to whether Congress intended to create one.  *Touche Ross*, 442 U.S. at 568.  The first and most fundamental question to be answered is: "In enacting this statute, did Congress intend to benefit these plaintiffs?"  *Lochman v. County of Charlevoix*, 94 F.3d 248, 253–54 (6th Cir. 1996).

Determining whether Congress intended to authorize a private cause of action has changed significantly over the years.  *Merrill Lynch*, 456 U.S. at 374.  When federal statutes

were less comprehensive, the test to determine the availability of an implied private remedy was relatively simple. *Id*. If a statute was enacted for the benefit of a special class, "the judiciary normally recognized a remedy for members of that class." *Id*. (citing *Texas & Pacific R. Co. v. Rigsby*, 241 U.S. 33 (1916)). Under this approach, the denial of a remedy was the exception rather than the rule. *Merrill Lynch*, 456 U.S. at 375. Prior to 1975, implied remedies were occasionally refused, "either because the statute in question was a general regulatory prohibition enacted for the benefit of the public at large, or because there was evidence that Congress intended an express remedy to provide the exclusive method of enforcement." *Id*. at 376.

Then, in 1975, the Supreme Court unanimously decided to modify the approach to determining whether a federal statute includes a private right of action. In *Cort v. Ash*, 422 U.S. 66 (1975), the Court confronted a private litigant's attempt to recover damages under a criminal statute that had never before established a private remedy. In rejecting that claim, the Court primarily focused on the intent of Congress in enacting the statute. Supreme Court case authority has clearly resolved that the focus must be on "the intent of Congress." *Merrill Lynch*, 456 U.S. at 377 (quoting *Texas Industries, Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 639 (1981). The Sixth Circuit has also recognized that the most important inquiry "is whether Congress intended to create the private remedy sought by the plaintiffs." *Pertuso v. Ford Motor Credit Co.*, 233 F.3d 417, 421 (6th Cir. 2000). It is important to note the existence of private rights of action are not to be inferred casually. *Id*. "Under *Touche Ross,* the recognition of a private right of action requires affirmative evidence of congressional intent in the language and purpose of the statute or in its legislative history." *Id*.

**A**

Plaintiff first claims that Defendants discriminated against her in violation of the Housing and Community Development Act (HCDA) — 42 U.S.C. § 5309. Defendants claim this statute does not include a private right of action. As with any case involving the interpretation of a statute, the analysis "must begin with the language of the statute itself." *Cannon*, 441 U.S. at 689.

§ 5309(a) establishes prohibited conduct — that no person, because of their race, color, national origin, religion, or sex, shall be excluded from, denied the benefits of, or be subjected to discrimination under any program or activity funded under the HCDA. Part (b) maintains that whenever the Secretary of Housing and Urban Development determines that a State or unit of general local government, which receives assistance under the HCDA, has failed to comply with § 5309(a), the Secretary shall work to secure compliance. § 5309(b). If unsuccessful, the Secretary is then authorized to refer the matter to the Attorney General "with a recommendation that an appropriate civil action be instituted," take action under Title VI of the Civil Rights Act of 1964, exercise powers provided by the HCDA, or take other actions provided by law. *Id.* Part (c) gives the Attorney General the authority, "whenever he has reason to believe that a State government or unit of general local government is engaged in a pattern or practice in violation of the provisions of this section," to bring a civil action for such relief as may be appropriate. § 5309(c). Parts (d) and (e) of the statute are not relevant for the analysis here, and will not be provided in detail.

Nowhere in the language of the statute is there an express grant of a private right of action. As such, Plaintiff can only maintain her suit under § 5309 if Congress "intended to create

the private remedy[.]" *Pertuso*, 233 F.3d at 421.  § 5301 is labeled "Congressional findings and declaration of purpose."  According to that section,

> The primary objective of this chapter and of the community development program of each grantee under this chapter is the development of viable urban communities, by providing decent housing and a suitable living environment and expanding economic opportunities, principally for persons of low and moderate income. Consistent with this primary objective, not less than 70 percent of the aggregate of the Federal assistance provided to States and units of general local government under section 5306 of this title and, if applicable, the funds received as a result of a guarantee or a grant under section 5308 of this title, shall be used for the support of activities that benefit persons of low and moderate income, and the Federal assistance provided in this chapter is for the support of community development activities[.]

§ 5301(c).  Part (d) goes on to establish, "It is also the purpose of this chapter to further the development of a national urban growth policy by consolidating a number of complex and overlapping programs of financial assistance to communities of varying sizes and needs into a consistent system of Federal aid[.]"  § 5301(d).

Although the statute does purport to protect citizens' rights, this is not enough to secure a private right to action.  *See Gonzaga Univ. v. Doe*, 536 U.S. 273, 284 (2002) (even when a statute contains rights-creating language, a plaintiff must still show "the statute manifests an intent 'to create not just a private *right* but also a private *remedy* .' ") (emphasis in original) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).  Nowhere in the language of the statute does Congress mention protecting citizens from discrimination by private parties.

Further, in all of the legislative history that accompanies the HCDA and its various amendments, not one discussion of creating a private right of action appears.  As the Supreme Court noted, "implying a private right of action on the basis of congressional silence is a hazardous enterprise, at best."  *Touche Ross*, 442 U.S. at 571.  This is not the "affirmative

- 10 -

evidence of congressional intent" required to establish a private right of action.  *Pertuso*, 233 F.3d at 421.

The relevant caselaw supports this conclusion.  In *Freeman v. Fahey*, 374 F.3d 663 (8th Cir. 2004), the Eighth Circuit confronted a case where the plaintiff attempted to bring a civil suit pursuant to § 5309 of the HCDA.  The court found that "section 5309 does not create a private right of action[.]"  *Id*. at 665.  The court concluded,

> [T]he statute does not evince Congress's intent to provide a private remedy. Rather, section 5309 provides for administrative enforcement of the anti-discrimination provisions by the Secretary of Housing and Urban Development, and for judicial enforcement through a civil action by the Attorney General, suggesting Congress intended to place enforcement in the hands of the Secretary, rather than private parties.

*Id*.  The majority of courts that have considered the question have also found Congress did not intend that § 5309 provide a private right of action.  *See*, *e.g.*, *Latinos Unidos De Chelsea En Accion (LUCHA) v. Sec'y of HUD*, 799 F.2d 774, 795 (1st Cir. 1986); *Reyes v. Erickson*, 238 F. Supp. 2d 632, 636–37 (S.D.N.Y. 2003); *Am. Conveyor Corp. v. Municipality of Guanica*, 614 F. Supp. 922, 927 (D.P.R. 1985); *Nabke v. United States Dep't of HUD*, 520 F. Supp. 5, 9 (W.D. Mich. 1981).

Plaintiff offers one case where the Fifth Circuit found § 5309 established a private right of action.  In *Montgomery Imp. Ass'n, Inc. v. U.S. Dept. of Housing and Urban Development*, 645 F.2d 291 (5th Cir. 1981), a group of low-income residents in Montgomery, Alabama sued the City and the Department of Housing and Urban Development.  The plaintiffs accused the defendants of "the wrongful allocation of some of the funds to activities not principally benefiting them as the special beneficiaries of the Community Act, and . . . the failure of the City to address appropriately the needs of lower-income people in the statutorily required Housing Assistance Plan."  *Id*. at 292.  The court found a private cause of action, in part, because

Congress had enacted legislation "for a particular purpose," and in so doing forbid "the expenditure of federal funds in a manner that will discriminate against members of designated classes in the execution of that purpose." *Id*. at 295.

As previously noted, Congress enacted the HCDA to benefit low-income citizens of urban developments; just the sort that were denied benefits in *Montgomery*. The citizens brought suit against the City of Montgomery and the Department of Housing and Urban Development; just the sort of defendants that § 5309 envisioned (a State or unit of local government). The Fifth Circuit's determination that those citizens were entitled to a private right of action against those defendants is highly distinguishable from this case. Here, Plaintiff was not a member of a low-income, urban community — the intended beneficiaries of the HCDA. Further, she is attempting to sue a private entity, not a unit of local government. Based on these factors, a private right of action does not accrue under § 5309. Plaintiff cannot state a claim for relief pursuant to that statute.

**B**

Plaintiff next claims Defendants discriminated against her in violation of the Energy Reorganization Act (ERA) — 42 U.S.C. § 5891; and the Energy Administration Act (EAA) — 15 U.S.C. § 775. Because the statutes provide no express private right of action, Plaintiff bases her suit on the similarity between those acts and Title VI of the Civil Rights Act of 1964 (42 U.S.C. § 2000 et seq.). Plaintiff asserts that because an implied private right of action has been found under Title VI, the same should be said of the ERA and the EAA.

As before, the first step in analyzing Congress's intent is to look to the language of the statutes. § 775 provides:

> No individual shall on the grounds of sex be excluded from participation in, be
> denied the benefits of, or be subjected to discrimination under any program or

activity carried on or receiving Federal assistance under this chapter. This provision will be enforced through agency provisions and rules similar to those already established, with respect to racial and other discrimination, under title VI of the Civil Rights Act of 1964 [42 U.S.C. 2000d et seq.]. However, this remedy is not exclusive and will not prejudice or remove any other legal remedies available to any individual alleging discrimination.

§ 775. The language of § 5891 is nearly identical.

Congress established its objectives with the EAA in 15 U.S.C. § 761(a). That section indicates that,

the general welfare and the common defense and security require positive and effective action to conserve scarce energy supplies, to insure fair and efficient distribution of, and the maintenance of fair and reasonable consumer prices for, such supplies, to promote the expansion of readily usable energy sources, and to assist in developing policies and plans to meet the energy needs of the Nation.

*Id*. As with the HCDA, no indication that Congress intended to supply any party with a private right of action. In fact, the only mention was the conservation of energy throughout the United States. Congress's purpose behind the ERA is similar, found in 42 U.S.C. § 5801(a). Congress maintains that,

the general welfare and the common defense and security require effective action to develop, and increase the efficiency and reliability of use of, all energy sources to meet the needs of present and future generations, to increase the productivity of the national economy and strengthen its position in regard to international trade, to make the Nation self-sufficient in energy, to advance the goals of restoring, protecting, and enhancing environmental quality, and to assure public health and safety.

§ 5801(a).

Both statutes were enacted to promote the "general welfare and the common defense and security" of the United States. *Id*.; § 761(a). As noted above, implied private remedies were refused "because the statute in question was a general regulatory prohibition enacted for the benefit of the public at large" even under the lax standard before 1975. *Merrill Lynch*, 456 U.S.

at 376.  Promoting the determination that these statutes do not establish a private right of action, no federal court has ever found an implied right of action under either § 5891 or § 775.

Plaintiff relies on the similarity of Title VI and the statutes in question to support the conclusion that a private right of action exists here.  The purpose of the statutes undermines this argument.  While Title VI of the Civil Rights Act of 1964 was enacted to protect individual civil liberty, the ERA and EAA were enacted to preserve energy resources.  The legislative history supporting the ERA and EAA is also devoid of discussion concerning a private right of action.

Additionally, even if § 5891 or § 775 and Title VI were to be treated similarly, other courts have found that Title VI protection does not extend to gender discrimination.  *See Shannon v. Lardizzone*, 334 F. App'x 506, 507 n.1 (3d. Cir. 2009) ("Title VI does not cover gender discrimination."); *Shotz v. City of Plantation*, 344 F.3d 1161, 1170 n.12 (11th Cir. 2003) (stating that Title VI is parallel to Title IX except that it prohibits race discrimination, not sex discrimination); *Davis v. Monroe County Bd. Of Educ.*, 120 F.3d 1390, 1396 (11th Cir. 1997) ("Title VI did not ban gender discrimination by recipients of federal funding."); *BBF Engineering Services, P.C. v. Michigan*, 2012 WL 380282, at *5 (E.D. Mich. Feb. 6, 2012) ("a plain reading of 42 U.S.C. § 2000d, which prohibits discrimination 'on the ground of race, color, or national origin,' does not extend to gender.").

Plaintiff bears the burden of demonstrating that Congress created a private right of action under § 5891 or § 775.  *Lochman*, 94 F.3d at 254.  She has not presented "affirmative evidence of congressional intent" to support the conclusion that either statute includes a private right of action.  *Pertuso*, 233 F.3d at 421.  No federal court has established such a right under either statute.  This Court will not create one.  Plaintiff's complaint pursuant to § 5891 and § 775 will be dismissed for the failure to state a claim.

**C**

Finally, Plaintiff claims Defendants discriminated against her in violation of two federal regulations — 24 C.F.R. § 6; and 10 C.F.R. § 1040.11–.13.  These claims will be dismissed in short order.

The Fifth Circuit held that "federal regulations cannot themselves create a cause of action; this is a job for the legislature."  *Stewart v. Bernstein*, 769 F.2d 1088, 1092 n.6 (5th Cir. 1985).   Similarly, the Sixth Circuit established, "federal regulations in and of themselves cannot create a private cause of action unless the action is at least implied from the applicable statute." *Parry v. Mohawk Motors of Michigan, Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) (citing *Smith v. Dearborn Fin. Servs., Inc.*, 982 F.2d 976, 979 (6th Cir. 1993)).  Because the underlying statutes offer no private right of action, the regulations Plaintiff relies on cannot create one on their own.  As such, she has not demonstrated a claim upon which relief can be granted.

Having established that Plaintiff cannot state a claim upon which relief can be granted, the "inquiry is at an end."  *Transamerica Mortg. Advisors, Inc. (TAMA) v. Lewis*, 444 U.S. 11, 24 (1979).  Defendants' arguments that Plaintiff's claims are barred by *res judicata* and the statute of limitations need not be reached.

**IV**

Accordingly, it is **ORDERED** that Defendants' Motion for Judgment on the Pleadings, ECF No. 5, is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint, ECF No. 1, is **DISMISSED** with prejudice.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: October 23, 2012

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney of record herein by electronic means and upon Brenda Geiling at P.O. Box 84, Kewadin, MI 49648 first class U.S. mail on October 23, 2012.

s/Tracy A. Jacobs
TRACY A. JACOBS